**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

TODD HANSEL,

        Defendant.

No. 06-CR-102-LRR

**ORDER**

---

*TABLE OF CONTENTS*

I.    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

    **A.**   *Findings of Facts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

    **B.**   *Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
        **1.**   *First Warrant* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
            **a.**   *Officers were lawfully in Defendant's master bedroom closet* . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
            **b.**   *Incriminating nature of the evidence* . . . . . . . . . . . **11**
            **c.**   *Lawful right of access to evidence* . . . . . . . . . . . . . **13**
        **2.**   *Second Warrant* . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
        **3.**   *Third Warrant* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**
        **4.**   *Federal Warrant* . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

III.  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

The matter before the court is Defendant Todd Hansel's Motion to Suppress and Request for Hearing ("Motion") (docket no. 20).

# I. PROCEDURAL BACKGROUND

On September 8, 2006, the grand jury returned a two-count Superseding Indictment against Defendant.[1]  Count 1 charges that, in or about June 2006, Defendant knowingly transported and shipped and attempted to transport and ship, in interstate and foreign commerce, visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1).  Count 2 charges that, in or about June 2006, Defendant knowingly possessed and attempted to possess images of minors engaged in sexually explicit conduct, said visual depictions having been produced using materials that had been shipped and transported in interstate and foreign commerce, namely, a Western Digital computer hard drive, which was manufactured outside the state of Iowa, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

On September 5, 2006, Defendant filed the instant Motion requesting that the court suppress items seized during searches of Defendant's residence.  Defendant alleges that the searches were based upon defective search warrants.  On September 12, 2006, the government filed a Resistance to Defendant's Motion.

On September 19, 2006, the court held a hearing ("Hearing") on Defendant's Motion.  Defendant was personally present and represented by Attorney John Lane.  Assistant United States Attorney Ian Thornhill represented the government.  Following the Hearing, the court requested the parties to submit further briefing.  On September 25, 2006, Defendant filed a Supplemental Memorandum of Authorities ("Supplemental Memorandum") (docket no. 42).  On the same date, the government filed a Supplemental

---

[1] Defendant was previously charged in a one-count Indictment alleging possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

Memorandum in Support of Government's Resistance to Defendant's Motion to Suppress ("Supplemental Resistance") (docket no. 43).

## II. ANALYSIS

### A. Findings of Facts

In about June of 2006, Investigator Charity Hansel from the Sex Crimes Unit of the Cedar Rapids Police Department ("CRPD") was contacted by a mother from Illinois. The mother told Investigator Hansel that her daughters, two minor girls, had informed her that they had been sexually abused by Defendant during the summer of 2005. On June 6, 2006, Investigator Hansel interviewed the girls and their brother at the Child Protection Center at St. Luke's Hospital ("CPC") in Cedar Rapids. The girls explained to Investigator Hansel that, when they visited their father in Cedar Rapids, he would often leave them at Defendant's house and in Defendant's care.[2] The girls said that Defendant would frequently have them sit on his lap and, on one occasion, he licked the tongue of the older girl.

The older girl said that Defendant would require her to sleep with him in his bed and would close the master bedroom door while they were sleeping. Defendant told her to sleep only in a top and underwear so that she did not get hot. Defendant would sleep very close to the older girl, sometimes even sharing her pillow. The older girl explained that, on several occasions, while in Defendant's bed, Defendant would touch her genital and pubic areas by rubbing his hand on the outside of her underwear. On at least one occasion, Defendant put his hand inside the older girl's underwear and rubbed her buttocks. He also talked to her about sex and showed her a pink dildo.

---

[2] It is unclear why the father left the girls with Defendant.

The younger girl told Investigator Hansel that, once, while she was asleep on the floor in Defendant's house, she awoke to find Defendant's hand touching her buttocks on the outside of the back of her pants.

Both girls reported that Defendant purchased swimsuits for them at Wal-Mart. Defendant would force them to change into their swimsuits in front of him, which meant that they would be nude in front of him. The older girl stated that Defendant took photographs of both of them in their swimsuits.

Based on what she learned from the interviews, Investigator Hansel filled out a search warrant application seeking to search Defendant's residence at 1013 Third Street Southwest, Cedar Rapids, Iowa, for items that would corroborate the girls' statements. In her June 20, 2006 affidavit submitted in support of her application for a state search warrant ("First Affidavit"), Investigator Hansel described her interview of the girls at the CPC. She reported the following: (1) that Defendant took the girls to Wal-Mart and bought them bikini swimsuits and bicycles; (2) that Defendant showed them a plastic replica of a man's penis after watching a Britney Spears movie with them; and (3) that Defendant walked around the girls wearing only white briefs. Investigator Hansel also stated that the girls' parents described Defendant's home, described its location and identified Defendant by photograph.

The June 20, 2006 search warrant ("First Warrant") issued by a state magistrate authorized the officers to search Defendant's residence for the following items:

> Wal-Mart sales receipt for children's swimwear, clothing consisting of a child's two-piece swimsuit in pink and another in blue with white flowers and a man's white briefs, a Britney Spears movie, sexual devices to include but not limited to a plastic replica of a man's penis, and children's bicycles.

On June 21, 2006, Investigator Hansel, along with two uniformed officers and two of her partners from the CRPD Sex Crimes Unit (collectively "officers"), one of whom was Investigator Corey Peiffer, executed the First Warrant. When Investigator Hansel arrived at Defendant's residence, the two uniformed officers had already stopped Defendant outside of his residence. Investigator Hansel provided Defendant with a copy of the First Warrant and went inside his residence. Defendant immediately informed Investigator Hansel that the swimsuits listed in the First Warrant were located in the master bedroom in a small dresser.

Based on this information, Investigator Hansel began the search of Defendant's residence in that bedroom. Investigator Hansel searched the small dresser. Investigator Peiffer searched the headboard of Defendant's waterbed because that is where the girls stated the pink dildo was located. After the officers had located each item that was named in the First Warrant except the Wal-Mart sales receipt and the white briefs, Investigator Peiffer began to search the closet in the master bedroom for the remaining items. While looking in the closet, Investigator Peiffer found eight computer-produced 8x10 photographs of nude females. Investigator Hansel testified at the Hearing that, based on her experience and training, she believed the females depicted in the eight 8x10 photographs were prepubescent. Printed at the bottom of each photograph were the Internet addresses "www.little-virgins.com" and "http://www.little-virgins.com/nudist/12.jpg" and the date "9/21/99." During her testimony at the Hearing, Investigator Hansel described the eight 8x10 photographs as "child erotica."

Investigator Hansel also discovered a computer located in the dining room of Defendant's residence. There was a webcam next to the computer. There was a chair located against the wall of the opposite side of the room. The webcam appeared to be aimed so that it could record images of the mid-section or genitals of a person sitting in

the chair. The chair was lined with towels. Officers found a nearly empty bottle of baby oil and towels next to the computer. A second computer was found in another part of Defendant's residence, but it did not appear to be "hooked up."

On the same date, June 21, 2006, and based on the girls' statements and the items found during the execution of the First Warrant, Investigator Hansel applied for a second state search warrant ("Second Warrant"). In the June 21, 2006 affidavit attached to the Second Warrant application ("Second Affidavit"), Investigator Hansel referred to the First Affidavit and stated that, pursuant to the First Warrant, officers had found "eight 8x10 printed pictures of unknown prepubescent white females without any clothing on." Investigator Hansel also advised that the officers had discovered two computers—one of which was "hooked up to a printer." The affidavit noted that the officers found a 35mm camera, a videocamera, many photographs of the girls in swimwear and several unmarked video tapes. Investigator Hansel also stated that, "in [her] experience, the printed pictures indicate[d] receipt of child pornography by means of a computer. [And, b]ecause of the camera equipment, there [was] also a likelihood child pornography may have been produced." On June 21, 2006, the state magistrate signed the Second Warrant and authorized CRPD officers to search Defendant's residence and seize the following:

> Any and all electronic devices, which are capable of analyzing, sorting, creating, displaying, converting, or transmitting electronic or magnetic impulses or data, including but not limited to: digital camera[s], computer[s], laptop computer[s], central processing units, external drives or storage media, terminals or video display units, together with peripheral equipment such as keyboards, modem[s], acoustic couplers, automatic dialers, electronic tone generating devices, printing devices, internal storage including hard drives, computer software programs, together with instruction manuals and associated documentation; the Photograph designs floppy

> disk[s] and CD disks for storage of electronic media, any
> notes, papers, or documentation in handwritting [sic], typed,
> photocopied, or printed form, or stored on computer printouts,
> magnetic tape[s], cassettes, disks, diskettes, photo-optical
> devices, or any other medium. Any photographs and
> videotapes. Any controlled substance as defined in Chapter
> 124 of the Iowa Code, including but not limited to suspicious
> pills.

That same day, officers searched Defendant's residence a second time. Pursuant to the Second Warrant, Investigator Hansel seized thirty-three "disks in reel," twenty-two CD's, two "Quik cams," one "ARTEC" scanner, one Polaroid digital camera with memory card and case, five pornographic magazines, one "printout of nude people," one photograph album, two computer towers, several floppy disks, two handwritten receipts, four computer CD's and two "papers."

After seizing the items pursuant to the Second Warrant, Investigator Hansel applied for a third state warrant ("Third Warrant") on June 21, 2006. In the June 21, 2006 affidavit attached to the Third Warrant application ("Third Affidavit"), Investigator Hansel stated that, during the execution of the Second Warrant, officers found two homemade computer towers, two cameras and a videocamera along with several other items. In the Third Affidavit, Investigator Hansel explained that "[t]he items removed from the residence possibly contain[ed] evidence relevant to the sexual abuse investigation which [was] currently being conducted by the [CRPD]." On June 21, 2006, the state magistrate signed the Third Warrant and authorized the search of the following:

> Computer hardware, software data, including, but not limited
> to central processing units (CPUs), hard discs, hard disc
> drives, floppy disc drives, tape drives, CD-ROM drives,
> display screens, keyboards, printers, modems, scanning
> devices, video cameras/camcorders/VCRs, and other image

> capturing/reproducing devices, magnetic tapes, cassette tapes, compact discs, thumb drives, removable USB storage devices, personal digital assistants (PDA[s]), electronic organizers, and floppy discs found together or separately from one another. Any and all documentation and records, whether on paper or stored on computer media (including information stored within a computer), disclosing, describing, referring, reflecting, or adverting to contemplated, present or previous agreements, arrangements, inquiries, or discussions by [Defendant] with any individuals. Such information to be seized includes personal communications between individuals or entities who are not subject[s] on the warrant, specifically including electronic communications residing on optical or magnetic media (email).

Upon executing all of the state search warrants, Investigator Hansel contacted the United States Attorney's Office concerning Defendant. On July 3, 2006, Investigator Hansel applied for a federal search warrant ("Federal Warrant"), seeking to seize and search

> documents, books, ledgers, records, files, computer software, including but not limited to, disks, magnetic tapes, programs, and computer printouts, and any and all correspondence in the name of [Defendant], and any aliases and/or email names he is using . . . in violation of Title 18, United States Code, Sections 2251, 2252, or 2252A.

"Attachment B" to Investigator Hansel's affidavit in support of the Federal Warrant application ("Federal Affidavit") itemized the items to be seized and searched. In her Federal Affidavit, Investigator Hansel provided a sequence of events surrounding the applications for and executions of the three state search warrants. She explained that the investigation of Defendant was initiated by the accusations of sexual abuse by the girls. Investigator Hansel listed the items found pursuant to the First Warrant, including the eight

8x10 photographs, but noted that none of the eight 8x10 photographs depicted the lascivious exhibition of the females' genital or pubic regions. Investigator Hansel stated that, although a computer examiner with the CRPD had begun an examination of Defendant's computer equipment, she did not rely on any information from that examination in her Federal Affidavit or application. On July 3, 2006, Chief Magistrate Judge John A. Jarvey signed the Federal Warrant.

### B. Legal Analysis

#### 1. First Warrant

Defendant alleges that officers exceeded the scope of the First Warrant by seizing the eight 8x10 photographs which were not specifically listed for seizure in the warrant. Defendant further argues that these eight 8x10 photographs were not in plain view.

The First Warrant authorized the CRPD officers to search Defendant's residence for the following items:

> Wal-Mart sales receipt for children's swimwear, clothing consisting of a child's two-piece swimsuit in pink and another in blue with white flowers and a man's white briefs, a Britney Spears movie, sexual devices to include but not limited to a plastic replica of a man's penis, and children's bicycles.

(Government Exhibit 10). A warrant to search a residence generally extends to every part of the residence in which the items sought may be found. *United States v. Ross*, 456 U.S. 798, 820-21 (1982); *see also United States v. Hughes*, 940 F.2d 1125, 1127 (8th Cir. 1991) ("A lawful search extends to all areas and containers in which the object of the search may be found.")

Before beginning the search of Defendant's residence, Investigator Hansel provided Defendant with a copy of the First Warrant. Defendant told Investigator Hansel that the swimsuits listed in the First Warrant were located in his master bedroom. Investigator

Hansel and Investigator Peiffer entered Defendant's master bedroom in search of the items. Investigator Hansel began to search the dresser, which Defendant said contained the swimsuits. All but two of the items listed in the First Warrant were found fairly quickly. While searching for the two remaining items, the white briefs and the Wal-Mart sales receipt, Investigator Peiffer opened the door to the closet located in the master bedroom and looked inside the closet. Investigator Peiffer found the eight 8x10 photographs in the closet and brought them to the attention of Investigator Hansel. Investigator Hansel testified at the Hearing that, based on her training and experience, she believed the females depicted in the eight 8x10 photographs were prepubescent.

Although the eight 8x10 photographs were not itemized in the First Warrant as items to be seized, they were properly seized pursuant to the plain view doctrine.

> [The plain view] doctrine allows a police officer to seize evidence without a warrant when (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," (2) the object's incriminating character is immediately apparent, and (3) the officer has "a lawful right of access to the object itself." *Horton v. California,* 496 U.S. 128[, 137] (1990); *see also United States v. Wayne,* 903 F.2d 1188, 1195-96 (8th Cir. 1990) (pre-*Horton* case). The discovery of evidence in plain view need not be inadvertent. *Horton,* 496 U.S. at 137 (eliminating inadvertence requirement of plurality in *Coolidge v. New Hampshire,* 403 U.S. 443 (1971)).

*Hughes*, 940 F.2d at 1126-27; *see also Horton*, 496 U.S. at 136 (holding that an officer, who is properly in the place where an item can be seen, may seize the item if its incriminating nature is readily apparent and that officer has the right to access the item).

### a.    Officers were lawfully in Defendant's master bedroom closet

The First Warrant gave the officers the authority to search Defendant's entire residence for several items. Investigator Peiffer had the authority to be in Defendant's master bedroom and the authority to search his closet. Defendant immediately told the officers that at least one of the items they were searching for was located in the master bedroom. Additionally, the older girl told Investigator Hansel that the pink dildo (described in the First Warrant as "a plastic replica of a man's penis") was in Defendant's master bedroom. The officers had the authority to search each place where the items listed in the First Warrant might be found. *See Ross*, 456 U.S. at 820-21; *see also United States v. Evans*, 966 F.2d 398, 400 (8th Cir. 1992) (holding that officers were permitted to seize photographs depicting the defendant's marijuana growing operation when a search warrant authorized the officers to search for and seize, among other things, drugs and drug paraphernalia which could have been inside the box containing the photographs). The Wal-Mart sales receipt was a small piece of paper, and the officers could look into any space within the residence that could contain the receipt. Accordingly, Investigator Peiffer had the authority to search Defendant's master bedroom and the closet in that master bedroom.

### b.    Incriminating nature of the evidence

The requirement that the incriminating nature of the evidence must be immediately apparent "is satisfied if there is 'probable cause to associate the property [seized] with criminal activity.'" *United States v. Newton*, 788 F.2d 1392, 1395 (8th Cir. 1986) (citing *Texas v. Brown*, 460 U.S. 730, 741-42 (1983)). In making this determination, the "collective knowledge of the officers executing the search" should be taken into consideration. *Id*. (citing *United States v. Wright*, 641 F.2d 602, 606 (8th Cir. 1981)).

The probable cause standard was carefully explained by the

Supreme Court in *Texas v. Brown,* 460 U.S. 730 (1983):
[P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. *Id.* at 742 (plurality opinion) (citation omitted) (quoting *Carroll v. United States,* 267 U.S. 132, 162 (1925)). Moreover, "the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* (quoting *United States v. Cortez,* 449 U.S. 411, 418 (1981)).

*United States v. Wayne*, 903 F.2d 1188, 1196 (8th Cir. 1990); *see also Evans*, 966 F.2d at 400 (holding that the incriminating nature of photographs depicting the defendant with large quantities of marijuana was immediately apparent to the officer who was searching defendant's residence for drugs and drug paraphernalia).

The incriminating nature of the eight 8x10 photographs in Defendant's master bedroom closet was immediately apparent. The officers were searching Defendant's residence in response to allegations of sexual abuse by the girls. The First Affidavit provided that Defendant abused the girls in his residence. At the Hearing, Investigator Hansel testified that, based on her training and experience,[3] the eight 8x10 photographs with "www.little-virgins.com" and "http://www.little-virgins.com/nudist/12.jpg" printed on the bottom of each photograph were child erotica and introduced the possibility that Defendant had received child pornography using the computer found in his dining room. She explained that people who possess or deal with child pornography frequently possess

---

[3] Investigator Hansel has been an officer at the CRPD for fourteen-and-a-half years and has been in the CRPD Sex Crimes Unit for three-and-a-half years.

child erotica, as well.  Accordingly, the "incriminating character" of the eight 8x10 photographs was readily apparent to the officers.

### c.    *Lawful right of access to evidence*

The officers had the lawful right to access the closet in Defendant's master bedroom and seize the eight 8x10 photographs.  The First Warrant gave the officers the authority to search Defendant's entire residence, including accessing any place or container where the items listed in the warrant might be found.  *See United States v. Murphy*, 69 F.3d 237, 242 (8th Cir. 1995) (holding that the warrant to search the defendant's "residence for illegal firearms provided the officers a lawful right of access to the place where the drug evidence was found").  Accordingly, the seizure of the eight 8x10 photographs found in Defendant's master bedroom closet was permissible.

### 2.    *Second Warrant*

Defendant asserts that the Second Warrant was defective.  Specifically, Defendant argues that Investigator Hansel made false statements in her Second Affidavit.  Defendant argues that the state magistrate relied on the false information in the Second Affidavit when he issued the Second Warrant.  In the Second Affidavit, Investigator Hansel stated that, in her "experience, the printed pictures [found during the execution of the First Warrant] indicate receipt of child pornography by means of a computer." (Government Exhibit 10). During the Hearing, however, Investigator Hansel testified that the eight 8x10 photographs were child erotica and not child pornography.  Defendant alleges that, because the Second Warrant was based on this misleading information, it was invalid and, therefore, the equipment seized pursuant to the Second Warrant must be suppressed.

To succeed in a challenge to a search warrant based on the argument that the warrant was based on false information in an affidavit, "a defendant must establish by a preponderance of the evidence that the affiant, either knowingly and intentionally, or with

reckless disregard for the truth, included a false statement within the warrant affidavit." *United States v. Clapp*, 46 F.3d 795, 799 (8th Cir. 1995) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Once Defendant has met his burden of proof, the court must determine whether, without the false contents of the Second Affidavit, there was sufficient information to establish probable cause. *Id.*

During the Hearing, Investigator Hansel testified that she never believed the eight 8x10 photographs were child pornography.[4] Investigator Hansel explained that, based on the circumstances and her training and experience, she believed that Defendant had received other photographs that meet the definition of child pornography. Investigator Hansel stated that the eight 8x10 photographs were child erotica and not child pornography. She was unable, however, to define the term "child erotica," except to state that the eight 8x10 photographs of nude females fit the definition, based on her training and experience. Regardless of whether Investigator Hansel's mischaracterization of the eight 8x10 photographs in the Second Affidavit as child pornography was intentional or reckless, the statement did not accurately portray the facts. Based upon the statement in the Second Affidavit, the state magistrate may have believed that the officers found child pornography at Defendant's residence. Therefore, the court finds that there was misleading statement in the Second Affidavit. *See Clapp*, 46 F.3d at 799.

Assuming, without deciding, that Investigator Hansel's micharacterization was intentional or reckless, the court finds there was sufficient information in the Second Affidavit to establish probable cause. The Second Affidavit referred to the First Warrnt and explained to the state magistrate that (1) the warrant application was based upon a report of sexual abuse of the girls at Defendant's residence; (2) during the execution of the

---

[4] "Child pornography" is a term of art, which is defined in 18 U.S.C § 2256(8).

14

First Warrant, officers found several photographs of the girls in swimsuits; (3) officers found the eight 8x10 photographs apparently generated from an Internet website; and (4) officers saw two computers, a 35mm camera and a webcam, indicating a likelihood that child pornography was being produced.

Alternatively, even if the court were to find the Second Warrant lacked probable cause, the seized evidence would be admissible pursuant to the independent source doctrine. The independent source doctrine allows "the introduction of evidence discovered initially during an unlawful search if the evidence is discovered later through a source that is untainted by the initial illegality." *United States v. May*, 214 F.3d 900, 906 (7th Cir. 2000) (citing *Murray v. United States*, 487 U.S. 533, 537 (1987)).

> To establish that the independent source doctrine applies to evidence seized pursuant to a warrant obtained after an unlawful entry to a home, the government must show both (1) that the decision to seek the warrant was independent of the unlawful entry—i.e., that police would have sought the warrant even if the initial entry had not occurred—and (2) that the information obtained through the unlawful entry did not affect the magistrate's decision to issue the warrant. *Murray*, 487 U.S. at 542; *United States v. Leveringston*, 397 F.3d 1112, 1115 (8th Cir. 2005).

*United States v. Khabeer*, 410 F.3d 477, 483 (8th Cir. 2005). The government has an "onerous burden of convincing [the] court that no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." *Murray*, 487 U.S. at 540. The court must explicitly find that the government has established both prongs of the test. *See Khabeer*, 410 F.3d at 483-84 (remanding the case to the district court for that court to make "an explicit finding" of whether the information obtained pursuant to an unlawful search affected the officers'

decision to seek a subsequent warrant). The independent source doctrine applies to evidence that was initially seized pursuant to a warrant which is determined to be invalid and then later seized pursuant to a valid warrant. *See May*, 214 F.3d at 906-07 (holding that physical evidence improperly seized during the execution of a state search warrant was properly admitted under the independent source doctrine when federal officers subsequently sought a federal warrant, based upon sufficient independent information).

In *United States v. Grosenheider*, 200 F.3d 321 (5th Cir. 2000), the Fifth Circuit Court of Appeals addressed the admissibility of evidence found on the defendant's computer in light of the independent source doctrine. *Id*. at 324. In *Grosenheider*, a computer repairman contacted the police department about child pornography that he discovered on the defendant's computer. *Id*. The police officer conducted an illegal search of the computer and contacted a Special Agent with the United States Customs Service. *Id*. The Special Agent obtained a federal warrant to search the defendant's computer. *Id*. at 325. The Special Agent's affidavit in support of the warrant application contained the information provided to the police officer by the computer repairman but did not contain any information discovered by the police officer during the illegal search of the computer. *Id*. Upon obtaining the warrant, the Special Agent secured the defendant's computer from the police officer, delivered the computer with warrant to the computer repairman, returned to his office with the computer and then searched the computer. *Id*. The Fifth Circuit Court of Appeals held that both prongs of the independent source doctrine had been met. *Id*. at 328. Namely, the government showed that (1) the Special Agent would have sought the search warrant even if the illegal search of the computer by the police office had not taken place and (2) the state magistrate's decision to issue the warrant was not tainted by any information gleaned from the illegal search of the computer. *Id*. Accordingly, the Fifth Circuit Court of Appeals held that "[u]nder the

independent source doctrine, . . . any illegality that may have been part of [the police officer]'s seizure did not affect the propriety of [the Special Agent]'s actions in any way, and the evidence was therefore admissible." *Id*. at 330.

In its Resistance, the government alleges that the federal government would have sought a warrant to seize and search Defendant's computer equipment even if the CRPD officers had not seized the equipment pursuant to the Second Warrant. During the Hearing, the government argued that, had the officers left the computers at Defendant's residence, the Federal Warrant would have sought to seize them from Defendant's residence instead of from the CRPD. As explained in Section II(B)(4) herein, there was sufficient evidence provided in the Federal Affidavit to support the existence of probable cause. Based on the information provided by Investigator Hansel, which she gathered during her interview of the girls and her search of Defendant's residence pursuant to the First Warrant, the United States Attorney, who is charged with prosecuting violations of 18 U.S.C. § 2252A, would have sought to obtain the Federal Warrant.

Furthermore, when issuing the Federal Warrant, Chief Magistrate Judge Jarvey did not rely on the information found on the computers when determining whether there was sufficient evidence that probable cause existed. The Federal Affidavit explicitly states that Investigator Hansel was not relying on and did not want Chief Magistrate Judge Jarvey to rely on any information obtained during the search of Defendant's computer. Investigator Hansel noted:

> [a] computer forensic examiner with the [CRPD] . . . began an examination of the computer equipment seized from [Defendant]'s residence at 1013 3rd Street, SW, Cedar Rapids, Iowa. Your affiant has not included any of the information from this examination in this affidavit and does not rely on that examination for purposes of this application.

(Government Exhibit 10).  Accordingly, there is no indication that Chief Magistrate Judge Jarvey was aware of or relied on any information found on Defendant's computer when he reviewed the Federal Affidavit and issued the Federal Warrant.  The government has met its burden to show that the decision to seek the Federal Warrant was not tainted by the evidence seized pursuant to the Second Warrant and Chief Magistrate Judge Jarvey's issuance of the Federal Warrant was not based on any information obtained pursuant to the seizure of Defendant's equipment by the CRPD officers.  Accordingly, Defendant's request that the court suppress the evidence seized pursuant to the Second Warrant is denied.

### 3.    *Third Warrant*

Defendant contends that the Third Warrant sought to examine the computers and related hardware that were improperly seized pursuant to the Second Warrant.  Defendant argues that, because the computers were improperly seized, they could not be searched by the CRPD officers.

As noted in Section II(B)(2) herein, the computer equipment was properly seized pursuant to the Second Warrant.  The state magistrate properly issued the Third Warrant to search the equipment in the CRPD officers' possession.  "The Fourth Amendment provides that no search warrants shall issue without probable cause 'supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Lloyd*, 396 F.3d 948, 952 (8th Cir. 2005) (citing U.S. Const. amend. IV).  A warrant must provide officers with sufficient detail to identify the property that may be seized.  *Id*.

The Third Warrant detailed the following computer equipment to be searched:

> 1) Two homemade computer towers bearing no serial numbers.

2) Poloriod [sic] digital camera with memory card bearing serial number 90305972.

3) Pentax camera with film bearing serial number 4154566.

4) Panasonic videocamera with tape bearing serial number I5WA10565.

(Government Exhibit 10). Additionally, the Third Warrant noted that the items the CRPD officers were to seize included

> any and all documentation and records, whether on paper or stored on computer media (including information stored within a computer), disclosing, describing, referring, reflecting, or adverting to contemplated, present or previous agreements, arrangements, inquiries, or discussion by [Defendant] with any individuals. Such information to be seized includes personal communications between individuals or entities who are not subject[s] on the warrant, specifically including electronic communication residing on optical or magnetic media (email).

Accordingly, the search of that equipment by the CRPD officers pursuant to the Third Warrant was proper.

Investigator Hansel noted in her Federal Affidavit that she did not rely on the information obtained pursuant to the execution of the Third Warrant when she requested the Federal Warrant. Additionally, none of the information gathered pursuant to the Third Warrant was provided to Chief Magistrate Judge Jarvey in the application for the Federal Warrant. Accordingly, even if the Third Warrant was defective, it would not taint the search of the computer equipment pursuant to the Federal Warrant.

### 4. Federal Warrant

Defendant asserts that there was no probable cause to issue the Federal Warrant to seize and search his computer and related items. Defendant argues that the Federal Warrant was issued in violation of his Fourth Amendment rights. Specifically, Defendant alleges that, because the eight 8x10 photographs were not child pornography, there was no probable cause to believe that Defendant's computer, computer disks, compact disks or video tapes contained images of child pornography.

"Probable cause exists if[,] under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found' in the place searched." *United States v. Bach*, 400 F.3d 622, 627 (8th Cir. 2005) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Probable cause supporting the search warrant existed if the affidavit set forth facts sufficient to create a fair probability that evidence of criminal activity would be found on the premises." *United States v. Gamboa*, 439 F.3d 796, 805 (8th Cir. 2006) (citing *United States v. Gumm*, 229 F.3d 698, 699 (8th Cir. 2000)). Based on the totality of the circumstances as provided in the Federal Affidavit, there was probable cause to believe that Defendant's computer and computer equipment contained evidence of child pornography.

Possession of child erotica, such as the eight 8x10 photographs found in Defendant's master bedroom, is not itself illegal and might not alone be sufficient to provide probable cause to believe that Defendant possessed child pornography. *See Jacobson v. United States*, 503 U.S. 540, 551 (1992) (noting that "[e]vidence of predisposition to do what once was lawful is not, by itself, sufficient to show predisposition to do what is now illegal"); *United States v. LaChapelle*, 969 F.2d 632, 638 (8th Cir. 1992) (noting that, in light of the defendant's entrapment defense, evidence of the defendant's possession of child pornography when such possession was legal was not admissible as evidence of the

defendant's predisposition to possess illegal child pornography). However, the possession of the eight 8x10 photographs must be combined with the other circumstances detailed by Investigator Hansel in her Federal Affidavit.

In her Federal Affidavit, Investigator Hansel provided a detailed account of her investigation of Defendant. The investigation began with accusations of improper sexual contact with the girls. The Federal Affidavit detailed the girls' accusations of sexual abuse. Investigator Hansel explained that the older girl stated that Defendant made her sleep in his bed and frequently slept so close to her that they shared a pillow. Defendant would fondle her pubic region by "rubbing his hand on the outside of her underwear and on at least one occasion put his hand inside the back of her underwear and rubbed her buttocks." (Government Exhibit 10). Investigator Hansel noted that the younger girl stated that she awoke to find Defendant's hand on her buttocks on top of her clothes. Investigator Hansel stated that both girls reported that Defendant "would force them to change into their swimsuits in front of him . . . and would be completely naked in front of [Defendant] in doing this." Defendant would then take photographs of the girls in their swimsuits. Investigator Hansel found several photographs of minor females in swimsuits, some of which were photographs of the girls who were sexually abused. While executing the First Warrant, Investigator Hansel observed a computer in Defendant's dining room. The computer was connected to both a printer and a webcam. The webcam was aimed at the seat of a chair on the other side of the dining room, "apparently capturing the mid-section of whomever would be seated there." (Government Exhibit 10). There were towels and an almost-empty bottle of baby oil next to the computer. Investigator Hansel stated in the Federal Affidavit that, based on her experience, training and conversations with other law enforcement officers, she is aware that persons who possess child erotica also frequently possess child pornography. She explained that

[i]n addition to child pornography, [child pornographers] frequently collect and possess "child erotica" material such as: erotic drawings of children, photographs of children clipped from catalogs, and advertisements such as clothing ads, and personal "souvenirs" relating to children with whom they have had contact, including such items as clothing and pubic hair clippings.

*Id*. Investigator Hansel noted that child pornographers use computers to produce, distribute and store child pornography and "that depictions of pornography can be hidden within computer systems or computer images." *Id*.

The Federal Affidavit presented to Chief Magistrate Judge Jarvey detailed the accusations of sexual abuse of the girls; described the computer equipment, webcam, chair, baby oil and towels observed during the execution of the First Warrant; described the eight 8x10 photographs found in Defendant's closet; and referenced the three state search warrants. Therefore, the court finds the Federal Affidavit was sufficient to establish probable cause to believe that a search of Defendant's computers would uncover evidence of the production or possession of child pornography. Accordingly, Defendant's Motion with regard to the Federal Warrant is denied.

### III. CONCLUSION

**IT IS ORDERED:**

(1)     The court **DENIES** Defendant Todd Hansel's Motion to Suppress (docket no. 20); and

(2)     The period between the filing of Defendant's Motion and this Order is excluded from calculation under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial

motion through the conclusion of the hearing thereon); 18 U.S.C. § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

**DATED** this 20th day of October, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA